UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Johnson & Johnson International, et al. | |
| Plaintiffs, | CIVIL ACTION NO. 17-01405 (FAB) |
| v. | DECLARATORY JUDGMENT AND COLLECTION OF MONIES |
| Puerto Rico Hospital Supply, Inc., et al. | |
| Defendants. | |

**PLAINTIFFS' SUR-REPLY IN FURTHER SUPPORT OF THEIR OPPOSITION TO MOTION TO DISMISS, STAY AND TO COMPEL ARBITRATION**

TO THE HONORABLE COURT:

COME NOW plaintiffs Johnson & Johnson International and Ethicon, Inc., (collectively referred to as "J&JI"), through the undersigned attorneys, and very respectfully state and pray as follows:

Buried in page seven of their reply brief, Defendants address for the first time the contractual language that provides a complete answer to their request to arbitrate the disputes currently before the Court: the Integration Clause in the 2005 non-exclusive distribution agreement (the "2005 Agreement"). The Integration Clause's clear contractual language affirms that the terms and conditions of the 2005 Agreement <u>will not interfere in any way with the existing commercial relationships</u> between the parties. See Docket No. 39-1 at p. 16. Thus, arbitration is only available for the claims associated to the 2005 Agreement and the miniscule list of products covered by it. Everything else should be resolved by the Honorable Court, as the Verified Complaint correctly seeks.

Defendants, tellingly, devote just a couple of paragraphs to this topic. See Docket No. 42 at pp 7-8. They interpret the Integration Clause as if it has nothing to do with arbitration because it does not contain the word "arbitration" or make a reference to arbitration. They cite no case law or authentic evidence in support. Their position is also inapposite because there is a dearth of case law supporting the statement that the clear language of a contract can be ignored.

To be clear, there is nothing to interpret about the Integration Clause. Its language is categorical and unambiguous. It provides that the *terms and conditions* of the 2005 Agreement, terms that include the arbitration clause raised by Defendants, will not interfere in any way with the prior commercial relationships. This contractual language not only trumps any potential presumption in favor of arbitration; it disposes of Defendants' arbitration argument altogether.

Furthermore, and to allow the Court access to all the relevant facts: J&JI has already agreed to arbitrate the claims arising out of the 2005 Agreement. See correspondence attached hereto as **Exhibits 1 and 2**. All the other claims are the subject of this litigation.

There is also no doubt about the prior commercial relationships that the Integration Clause alludes to: (1) the wound closure product line relationship (dating back to the 1950s) with Ethicon, Inc., an affiliate of Johnson & Johnson International, as that term is defined in the 2005 Agreement (see Docket No. 1, at ¶¶ 14-16); (2) the Ethicon Endo-Surgery commercial relationship established since the 1980s (see Docket No. 1, at ¶ 17); (3) the December 6, 1990 agreement with Johnson & Johnson Medical, Inc. (another affiliate of Johnson & Johnson International) (see Docket No. 1, at ¶ 18); and (4) the Biosurgery commercial relationship for certain hemostatic products (see Docket No. 1, at ¶ 19).

The parties' intention, as expressed in the Integration Clause, was to not interfere in any way with these relationships through any of the terms of the 2005 Agreement, <u>including the terms of its arbitration clause</u>. Puerto Rico Hospital Supply must honor this commitment. The instant case should continue before the Honorable Court. The claims arising from the 2005 Agreement will be addressed in the agreed-to arbitration process.

Defendants insist on misstating the Verified Complaint's scope. They contend it seeks to terminate all the distribution agreements between the parties, including the 2005 Agreement. They now point to the Verified Complaint's prayer for relief and its cause of action for permanent injunction. The Verified Complaint is not aimed in any way, shape, or form at the 2005 Agreement. There are no allegations addressing Defendants' breach of that agreement or seeking to collect the amounts owed by Puerto Rico Hospital Supply ("PRHS") under the same. All the amounts detailed in the Verified Complaint, including the consolidated debt, exclude the specific amounts owed by PRHS for products sold and delivered under the 2005 Agreement. Moreover, J&JI represented to the Court, a statement that was verified by two of its senior executives in Puerto Rico, that neither the 2005 Agreement or any of the amounts owed under it were part of the instant case. See Docket No. 1 at ¶ 22.

Moreover, the prayer for relief seeks to terminate all the commercial relationships *that are covered in the Verified Complaint*. Plaintiffs do not intend to terminate, as part of the instant litigation, the 2005 Agreement. As to the Verified Complaint's sixth cause of action for injunctive relief, J&JI is seeking a permanent injunction against Defendants after the Honorable Court rules on the merits of the declaratory judgment request. Like all the other reliefs requested in the Verified Complaint, the permanent injunction is circumscribed to the pre-2005 commercial

relationships and the products covered by therein. Just to be clear, J&JI is not seeking, as part of this litigation, to enjoin PRHS from continuing to exercise its contractual rights to distribute (on a non-exclusive basis) the products covered by the 2005 Agreement. Any permanent injunction to be entered by the Honorable Court once the merits of the case are litigated can be tailored to exclude the specific products listed on Exhibit A of the 2005 Agreement. "A district court has a wide range of discretion in framing an injunction in terms it deems reasonable to prevent wrongful conduct." *Soltex Polymer Corp. v. Fortex Indus., Inc.*, 832 F.2d 1325, 1329 (2d Cir. 1987) (quoting *Springs Mills, Inc. v. Ultra-cashmere House, Ltd.*, 724 F.2d 352, 355 (2d Cir.1983)).

The operative facts relevant to the instant case are also distinguishable from those that may be relevant in the arbitration related to the 2005 Agreement. First, the products sold and delivered are different and clearly distinguishable. Exhibit A to the 2005 Agreement contains a detailed list of the products covered by it. The list of the 2005 Agreement is very limited, in terms of number of products and of monetary consequences. In contrast, the pre-2005 relationships cover hundreds of different product codes. Second, PRHS distributes the products covered by the 2005 Agreement on a *non-exclusive* basis, while it has been designated as an exclusive distributor for most of the pre-2005 relationships. Third, J&JI is entitled to directly sell to end clients (and does sell) the limited products covered by the 2005 Agreement, but it does not sell any of the hundreds of products covered by the pre-2005 agreements.

As the Honorable Court can see, the 2005 Agreement is a separate and discrete relationship entered by the parties after doing business for decades. Said agreement expressly did not supersede or modify in any way the pre-2005 relationships. These relationships, as detailed in the Verified Complaint, continue in full force and effect pursuant to their own terms

4

and conditions, none of which include a contractual obligation to arbitrate. Defendants' motion to dismiss is a crude attempt at distracting the current proceedings to avoid their payment obligations under the pre-2005 commercial relationships. The outstanding debt remains as high as it was back in March when J&JI filed the instant case. As of May 28, 2017, PRHS's consolidated debt with J&JI amounted to $3,594,705.05, while Customed, Inc. owed $609,618.58. <u>See</u> updated aging report, attached hereto as **Exhibits 3 and 4**.[1]

WHEREFORE, J&JI respectfully requests that this Honorable Court enter an order denying Defendants' motion to dismiss.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 1st day of June, 2017.

**MELENDEZ TORRES LAW, PSC**
*Attorneys for*
*Johnson & Johnson International and Ethicon, Inc.*
MCS Plaza, Suite 1200
255 Ponce de León Avenue
San Juan, PR 00917
Telephone (787) 281-8100
Fax (787) 281-8310

*s/Sonia I. Torres Pabón*
USDC-PR No. 209310
storres@melendeztorreslaw.com

*s/Heriberto López-Guzmán*
USDC-PR No. 224611
hlopez@melendeztorreslaw.com

---

[1] These amounts exclude PRHS's current debt for products covered by the 2005 Agreement, which totals $75,992.16, as of May 28, 2017.

## **CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that on this same date we electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/Heriberto López-Guzmán*
Heriberto López-Guzmán
