IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| JOHNSON & JOHNSON INTERNATIONAL, *et al.*, | |
|---|---|
| **Plaintiffs**, | |
| v. | **Civil No.** 17-1405 (FAB) |
| PUERTO RICO HOSPITAL SUPPLY, INC., *et al.*, | |
| **Defendants**. | |

**OPINION AND ORDER**[1]

BESOSA, District Judge.

Before the Court is defendants Puerto Rico Hospital Supply, Inc. ("PRHS")'s and Customed, Inc. ("Customed")'s motion to dismiss or stay proceedings and compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3 and 4. For the reasons set forth below, the Court **GRANTS IN PART and DENIES IN PART** defendants' motion to compel arbitration and stays all claims pending the completion of arbitration.

**I. BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs Johnson & Johnson International ("J&JI") and Ethicon, Inc. ("Ethicon") are wholly owned subsidiaries of Johnson & Johnson, a US-based multinational supplier of healthcare

---

[1] Audrey Mulholland, a second-year law student at American University Washington College of Law, assisted in the preparation of this Opinion and Order.

products, medical devices, and consumer goods. (Docket No. 1 at pp. 2-3.) Defendants PRHS and Customed are Puerto Rico corporations that distribute J&JI and Ethicon branded products on an exclusive and non-exclusive basis in Puerto Rico and the U.S. Virgin Islands. Id. at pp. 4-5. The parties have a number of distribution agreements between them. Id.

Defendant PRHS and its corporate predecessors have been distributing Ethicon-branded products since 1958. Id. at p. 4. PRHS has been an exclusive distributor of the Ethicon Endo-Surgery product line since the 1980s without a written agreement. Id. In April 1987, Ethicon and PRHS signed a statement of policy summarizing the exclusive distribution of the Ethicon wound closure product line. Id. In December 1990, Johnson & Johnson Medical, Inc.,[2] an affiliate of Johnson & Johnson, signed an exclusive written distribution agreement with PRHS for the distribution of a limited category of products including disinfectants, topical absorbable hemostats, and closed wound drainages.[3] Id. PRHS has also distributed on a non-exclusive

---

[2] Johnson & Johnson Medical, Inc. ceased to exist on December 29, 1997, with Ethicon becoming its successor in interest. (Docket No. 1 at p. 4.)

[3] On April 14, 1998, PRHS and J&JI settled a Law 75 dispute. Id. at p. 4; P.R. Hosp. Supply, Inc. v. Johnson & Johnson, Civil Case No. 97-1201 (Perez-Gimenez, J.). The settlement agreement provides that PRHS's payment term is 90 days and that J&JI is the entity that administers all commercial relationships between the parties. Id. at p. 5.

basis, hemostatic products from the Biosurgery line without a written agreement. Id. More recently, in September 2005, PRHS and J&JI entered into a non-exclusive distribution agreement regarding a limited selection of Ethicon, Ethicon Endo-Surgery, LifeScan, and Codman branded products which J&JI and Ethicon contend is not part of the present litigation. Id. at p. 5. The 2005 Non-Exclusive Distribution Agreement ("2005 Agreement") contains an arbitration clause, the scope of which is in dispute.

Customed is a Puerto Rico corporation that manufactures healthcare products and assembles customized healthcare packs with products from various suppliers. Id. at p. 3. PRHS and Customed share common ownership. Id. Customed has been purchasing Ethicon Endo-Surgery products and Women's Health and Urology products from J&JI for the past several years. Id. at p. 5. J&JI has never executed a distribution agreement with Customed. Id.

On March 28, 2017, J&JI and Ethicon filed a complaint alleging PRHS and Customed breached their payment obligations. Id. at p. 1. Plaintiffs contend that both PRHS and Customed have failed to pay invoices in full since the beginning of 2016. Id. Plaintiffs worked with defendants to develop a payment plan, signed on September 2, 2016, to bring the accounts current. Id. at p. 6. PRHS and Customed agreed to bring their accounts current by January 2017 through a series of payments made throughout the year. Id. at p. 7. Defendants did not meet the payment plan, whereupon J&JI

notified them of the contractual breach, canceled the payment plan, accelerated the amount due by requesting full payment on December 6, 2016, and issued a warning that the material breach could result in termination of the distribution relationship. Id.

As of the filing of the complaint, J&JI and Ethicon contend that defendants owe a total of $4,244,725.81 for products sold and delivered.[4] Id. They also obtained copies of PRHS' 2014 and 2015 financial statements which reveal PRHS made cash advances to Customed totaling over $9 million. Id. at p. 8. J&JI and Ethicon assert that according to Customed's most recent audited financial statement, their cash balance at the end of 2015 was only $350 despite the multiple cash advances. Id. Plaintiffs continue to communicate with PRHS and Customed directing them to pay the total amount due as soon as possible. Id. at 7.

As a result of the contractual breach, J&JI and Ethicon request a declaratory judgment that (1) orders PRHS and Customed to pay immediately the amounts owed plus legal interests, (2) declares that J&JI and Ethicon have just cause to terminate all commercial relationships with PRHS and Customed pursuant to

---

[4] According to J&JI, PRHS owes the following amounts: $1,524,884.17 plus legal interest for the Ethicon wound closure product line; $1,633,920.31 plus legal interest for products under the Ethicon Endo-Surgery product line; $239,914.04 plus legal interest for products covered under the 1990 agreement; and $287,707.42 plus legal interest for Biosurgery hemostatic products. (Docket No. 1 at pp. 9-10.) Customed owes $558,299.86 plus legal interests for all products. Id. at p. 10.

Puerto Rico Civil Code and Law 75, (3) declares that PRHS and Customed have acted with bad faith by dissipating assets to pay their debts, (4) grants injunctive relief requiring defendants to cease and desist from using trademarks and corporate logos or promoting themselves as representatives of J&JI, and (5) grants attorneys' fees and costs. Id. at pp. 14-15.

On April 20, 2017, defendants PRHS and Customed filed a motion to dismiss or stay the action and compel arbitration pursuant to Section 3 and 4 of the FAA. (Docket No. 19.) Defendants contend that the 2005 Agreement requires that all claims brought forth by plaintiffs must first be submitted to arbitration. Id. at p. 1.

J&JI and Ethicon responded on May 18, 2017 contesting arbitration and re-emphasizing that the 2005 Agreement is not a part of their current litigation and that the arbitration clause does not apply retroactively to the agreements and commercial relationship between the parties predating 2005. (Docket No. 39.) They attached a copy of the 2005 Agreement with an updated and detailed exhibit of the product list covered by it.[5] (Docket No. 39-1.) For the purpose of evaluating the scope of the arbitration clause the Court will be using this updated copy of the 2005 Agreement.

---

[5] The product list covered by the 2005 Agreement was amended and expanded in July 2010. (Docket No. 39-1 at p. 22.)

## II.  STANDARD OF REVIEW

Defendants PRHS and Customed have moved to compel arbitration pursuant to either Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") or 56 ("Rule 56"), favoring the Rule 56 standard. (Docket No. 19 at p. 6.)  Plaintiffs J&JI and Ethicon assert that a Rule 12(b)(6) standard of review is appropriate. (Docket No. 39 at p. 3.)  The First Circuit Court of Appeals has yet to address the precise standard of review for a motion to compel arbitration. See, Pla-Fit Franchise, LLC v. Patricko, Inc., No. 13-cv-489-PB, 2014 WL 2106555, at *3 (D.N.H. May 20, 2014); Boulet v. Bangor Sec. Inc., 324 F. Supp. 2d 120, 123 (D. Me 2004).  Other circuits have discussed whether to apply a Rule 12(b)(6) motion to dismiss standard or a Rule 56 summary judgment standard when reviewing a motion to compel arbitration. When it is apparent on the face of the complaint that certain claims are subject to arbitration the court should generally apply a Rule 12(b)(6) standard. See Nicosia v. Amazon.com, Inc., 834 F.3d 220, 231 (2d Cir. 2016); Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 776 (3d Cir. 2013).  If courts are required, however, to consult extrinsic evidence when determining whether certain claims are arbitrable, then summary judgment is the appropriate guiding standard.  See Nicosia, 834 F.3d at 231; Guidotti, 716 F.3d at 776; Pla-Fit Franchise, LLC, 2014 WL 2106555, at *3.

Both parties have relied extensively upon exhibits filed in the record outside of the complaint. The Court intends to reference these materials and look beyond the complaint when assessing the scope of the arbitration clause and will therefore resolve the motion using the summary judgment standard. See Pla-Fit Franchise, LLC, 2014 WL 2106555, at *3. Although summary judgment requires notice to the parties to allow further discovery, the court "finds no need to mechanically enforce the requirement of express notice . . . when the opposing party has received movant's motion and materials and has had a reasonable opportunity to respond." Nutrasweet Co. v. Venrod Corp., 982 F. Supp. 98, 99 (D.P.R. 1997) (Fusté, J.) (citing Chaparro-Febus v. Int'l Longshoremen Ass'n, Local 1575, 983 F.2d 325, 332 (1st Cir. 1992)). The extensive filings of both parties, gave constructive notice that the Court would look beyond the pleadings when ruling on the motion to compel arbitration and thus no further discovery is required.

### III. DISCUSSION

**A. Legal Standard for Order Compelling Arbitration**

The FAA establishes the validity and enforceability of written arbitration agreements. The FAA provides that a written arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA expresses a

Congressional policy in favor of arbitration, and places arbitration agreements on an equal footing with other contracts. 9 U.S.C. § 2; Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006). The FAA mandates district courts to compel arbitration when the parties have signed a valid arbitration agreement governing the issues in dispute, removing the district courts' discretion over whether to compel arbitration or provide a judicial remedy to the parties. 9 U.S.C. § 4; Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). The existence of a valid arbitration agreement is based on the consent of the parties to arbitrate at least some of their claims and to forgo a judicial remedy for those claims. McCarthy v. Azure, 22 F.3d 351, 354-55 (1st Cir. 1994) (internal citations omitted). Therefore, a party cannot be required to submit to arbitration any dispute which he or she or it has not agreed to submit. AT&T Techs., Inc. v. Commc'ns. Workers of Am., 475 U.S. 643, 648 (1986) (quoting United Steelworkers v. Warrior & Gulf Navig. Co., 363 U.S. 574, 583 (1960)).

Based on the above principles, the United States Court of Appeals for the First Circuit has set forth four requirements that must be satisfied for a court to grant a motion to compel arbitration: (1) a valid arbitration agreement must exist; (2) the moving party must be entitled to invoke the arbitration clause; (3) the other party must be bound by the clause; and (4) the claim

must fall within the scope of the arbitration clause. InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003). The Court will address each requirement in turn.

**B.  Analysis**

  **1.  Valid Arbitration Agreement**

The parties do not contest that there is a valid arbitration agreement between them. A dispute resolution and arbitration provision in the 2005 Agreement provides:

> If a dispute arises out of or relates to this Agreement, or the breach thereof, and if the dispute cannot be settled through negotiation, the Parties agree first to try in good faith to settle the dispute by mediation . . . if the dispute cannot be resolved by mediation . . . then the dispute will be finally resolved by binding arbitration.

(Docket No. 39-1 at p. 17.) J&JI and Ethicon acknowledge in their complaint that they "have agreed to submit themselves to mandatory mediation and arbitration to address disputes" arising from the 2005 Agreement. (Docket No. 1 at p. 5.) PRHS and Customed's motion to compel arbitration invokes the arbitration clause of the 2005 Agreement as evidence that all plaintiffs' claims are subject to "compulsory arbitration." (Docket No. 19 at p. 1.) At the least, the parties have agreed to submit some disputes between them to arbitration pursuant to the 2005 Agreement. Thus a valid arbitration clause currently exists between the parties.

### 2. Moving Party Must Be Entitled to Invoke Arbitration Clause

The second requirement is that the parties moving to compel arbitration be entitled to invoke the arbitration clause. This requirement is satisfied where the movants are signatories or parties to the agreement containing the arbitration provision. Torres-Rosario v. Mariott Int'l, 872 F. Supp. 2d 149, 153 (D.P.R. 2012) (Besosa, J.). Nonsignatories may also be entitled to invoke the arbitration clause as third-party beneficiaries of the contract or under the principle of equitable estoppel. Third-party beneficiaries are those that the contracting parties intend to confer a benefit upon and who are subject to and can invoke clauses in the contract. InterGen N.V. v. Grina, 344 F.3d 134, 146 (1st Cir. 2003). Equitable estoppel on the other hand "precludes a party from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligations." Sourcing Unlimited, Inc. v. Asimco Int'l, Inc., 526 F.3d 38, 47 (1st Cir. 2008) (quoting InterGen N.V., 344 F.3d at 145) (internal quotation marks omitted). Thus a signatory can be estopped from avoiding arbitration with a nonsignatory when the dispute is "intertwined with the agreement the estopped party has signed." Id. Claims are intertwined with an agreement when they directly or indirectly invoke the terms of that agreement or when

the agreement must be referenced when resolving the dispute. See Sourcing Unlimited, 526 F.3d at 47.

Defendants PRHS and Customed are invoking the arbitration clause in the 2005 Agreement. PRHS is a signatory of the 2005 Agreement and thus is entitled to invoke the arbitration clause provided within the Agreement. (Docket No. 39-1 at p. 18.) Defendants contend that Customed, as an affiliate of PRHS, is either a party to the agreement or a third-party beneficiary with standing to invoke the arbitration clause. (Docket No. 19 at p. 14.) They also contend that J&JI and Ethicon, by virtue of equitable estoppel, cannot avoid arbitration invoked by Customed. Id. The Court disagrees. Customed is not a party to, nor a third-party beneficiary of, the 2005 Agreement. Although defendants correctly assert that Customed is an affiliate of PRHS as defined in the contract,[6] no benefits are intentionally conferred on them within the Contract. Although as an affiliate Customed may benefit from PRHS's exercise of contractual rights, this benefit is distinct from a third-party beneficiary. See InterGen N.V., 344 F.3d at 147.

---

[6] The 2005 Agreement defines affiliate as "any entity that directly or indirectly controls or is controlled by or is under common control with another entity and shall include, without limitation, any direct or indirect parent, subsidiary, and affiliated corporations." (Docket No. 39-1 at p. 1.) Customed shares common ownership with PRHS and is thus an affiliate.

Furthermore, the principle of equitable estoppel is not applicable because the claims brought against Customed are not intertwined with the 2005 Agreement. The Court can consider J&JI and Ethicon's breach of contract claims against Customed entirely separate from and without reference to the 2005 Agreement. Customed has different payment terms, distributes different products, and does not have a written distribution agreement with J&JI. (Docket No. 1 at p. 5.) Plaintiffs' commercial relationship with Customed is not implicated by the 2005 Agreement. The Court therefore holds that PRHS is entitled to invoke the arbitration clause within the 2005 Agreement while Customed is not. Customed's motion to compel arbitration is **DENIED**.

3.  **Other Party Must Be Bound by Clause**

There is no dispute between the parties on whether J&JI and Ethicon are bound by the arbitration clause in the 2005 Agreement. Parties are bound to the contracts they sign. Torres-Rosario, 872 F. Supp. 2d at 154. Johnson & Johnson Medical Caribbean signed the contract as a division of J&JI regarding the distribution of certain Ethicon products. (Docket No. 39-1.) Ethicon, although not a direct signatory on the agreement, is a party to it through manufacturing and supplying the contract products. (Docket No. 39-1 at p. 22.) Thus both J&JI and Ethicon are bound by the arbitration clause in the 2005 Agreement.

### 4. Claims Must Fall Within the Scope of the Arbitration Clause

J&JI and Ethicon contend that any dispute related to the 2005 Agreement is not the subject of their current litigation and that their claims do not fall within the scope of the arbitration clause. PRHS avers that all the claims in the complaint "arise out of or are related to" the 2005 Agreement and are thus subject to mandatory arbitration. The Court will first address the intent of the parties and scope of the arbitration clause before assessing whether J&JI and Ethicon's claims fall within that scope.

It has long been affirmed that any disagreement regarding the scope of an arbitration clause is to be resolved by a court. Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296 (2010) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)); Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1, 7 (1st Cir. 2014). In interpreting the parties' intentions to arbitrate, a court must apply state-law principles of contract formation. Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 376 (1st Cir. 2011). Pursuant to Puerto Rico law,[7] the intention of the contracting parties prevails and the court must read contract provisions in relation to one another, considering the contract in full when giving meaning to ambiguous

---

[7] The 2005 Agreement is governed by the laws of the Commonwealth of Puerto Rico. (Docket No. 39-1 at p. 18.)

clauses.  See P.R. Laws Ann. tit. 31 §§ 3471, 3475.  Furthermore, ambiguities regarding the scope of the arbitration clause should be resolved in favor of arbitration.  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 945 (1995); Grand Wireless, Inc., 748 F.3d at 7; IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 450 (1st Cir. 2010).  A motion to compel arbitration should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  Caguas Satellite Corp. v. EchoStar Satellite LLC, 824 F. Supp. 2d 309, 314 (D.P.R. 2011) (Besosa, J.) (quoting AT&T Techs., Inc., 475 U.S. at 650).

J&JI and Ethicon contend that the arbitration clause in the 2005 Agreement clearly manifests the intent of the parties to narrows its scope to disputes strictly related to the 2005 Agreement.  PRHS in contrast argues that the broad wording "arises out of or relates to" grants the arbitration clause nearly unlimited reach.  The Court finds the intention of the parties and scope of the arbitration clause to fall somewhere in between these two extremes.  The arbitration clause's language is naturally ambiguous and susceptible to a number of interpretations yet is not a catch-all for every dispute between the parties.  In determining the actual intent of the contracting parties, the Court looks beyond the arbitration clause.

A reading of the arbitration clause in light of the other provisions in the 2005 Agreement and the parties overall commercial relationship narrows its scope. The character of the 2005 Agreement as a non-exclusive distribution agreement distinguishes it from other "exclusive" agreements between the parties. An integration clause in the 2005 Agreement also explicitly states that "this Agreement will not interfere in any way with existing commercial relationships that the Distributor may have with other affiliates of the Company." (Docket No. 39-1 at p. 16.) The subject matter of the 2005 Agreement is furthermore limited to the "Contract Products" defined as "only the products included in the list attached" to the contract as Exhibit A. Id. at p. 1. The combination of these factors manifests an intention of the parties to limit the reach of the contractual provisions including the arbitration clause.

In similar supplier-distributor relationships where parties have a number of valid contracts between them, courts have held that arbitration clauses in latter contracts do not signify that the parties ever intended retroactive application. See Choice Security Sys., Inc. v. AT&T Corp., No. 97-1774, 1998 WL 153254, at *1 (1st Cir. 1998) (unpublished); Security Watch, Inc. v. Sentinel Sys., Inc., 176 F.3d 369, 374 (6th Cir. 1999) ("Had the parties intended to apply the new ADR processes to disputes arising under the previous contracts, we believe they would have done so

explicitly.").[8]  The Court finds the parties did not intend the arbitration clause in the 2005 Agreement to have retroactive application to disputes arising under previous agreements.  This conclusion, however, is not dispositive of the issue at hand.

The Court's second task is to determine whether the claims, as J&JI and Ethicon have pled them, fall within the scope of the arbitration clause.  In determining whether the plaintiffs' claims fall within the scope of the arbitration clause, a court must "focus on the factual allegations underlying their claims in the Complaint."  Dialysis Access Ctr., LLC, 638 F.3d at 378.  Courts have determined that arbitration clauses using the language "arising from or relating to" have broad application.  See Grand Wireless, Inc., 748 F.3d at 8.  The First Circuit Court of Appeals has held that factual disputes arising from claims that must be resolved by reference to an agreement, "arise out of" and "relate to" that agreement and therefore fall within the purview of the arbitration clause.  Id.

J&JI and Ethicon emphatically contend that the 2005 Agreement is not a part of their complaint and litigation before

---

[8] Although the language of the arbitration clause in both of these cases required the parties to arbitrate "all disputes . . . arising out of or relating to the **products furnished** pursuant to this Agreement" as opposed to simply "all disputes arising out of or relating to this Agreement", the 2005 Agreement's continuous reference to "contract products" has a similar effect. Choice Security Sys., Inc., 1998 WL 153254, at *1; Security Watch, Inc., 176 F.3d at 372 (emphasis added).

the Court. In a conclusory statement in the complaint, they acknowledge the existence of the 2005 Agreement and the validity of the arbitration clause and assert that it is "not part of this litigation." (Docket No. 1 at p. 5.) They attempt to convince the Court that their entire dispute can be resolved without implicating the 2005 Agreement. J&JI and Ethicon cannot avoid arbitration, however, by "dint of artful pleading alone." Combined Energies v. CCI, Inc., 514 F.3d 168, 172 (1st Cir. 2008).

When distilling the complaint down to the factual allegations, the Court concludes that plaintiffs' main cause of action stems from PRHS and Customed's breach of contract as a result of failing to pay product invoices, including invoices related to the 2005 Agreement.[9] Plaintiffs contend the failure to pay constitutes a material breach of contract that triggers Puerto Rico Law 75 justifying the dissolution of all their commercial relationships with PRHS and Customed. While plaintiffs attempt to clarify in their sur-reply that the prayer for relief only seeks to terminate "all the commercial relationships *that are covered in the Verified Complaint*," the language used throughout the complaint consistently contradicts this statement. (Docket No. 45

---

[9] Plaintiffs do not include the amount PRHS owes pursuant to the 2005 Agreement in their complaint or include a request for collection of monies. They acknowledge, however, in their reply to the motion to dismiss, that PRHS has an outstanding debt of $71,849.22 in regards to the products covered under the 2005 Agreement. (Docket No. 39 at p. 7.)

at p. 3.)   J&JI and Ethicon request the court on a number of occasions to grant them just cause to terminate **all commercial relationships** between the parties and find that PRHS and Customed have acted in bad faith.  (Docket No. 1 at pp. 2,7,9,12, and 14.) This claim squarely implicates and relates to the 2005 Agreement as a part of the overall commercial relationship between the parties.

Plaintiffs also request injunctive relief ordering defendants to "cease and desist from promoting themselves as representatives, agents, or distributors of J&JI and from attempting to conduct business as such in Puerto Rico and the U.S. Virgin Islands." (Docket No. 1 at p. 14.)  They also request that the Court order defendants to "discontinue using any and all Johnson & Johnson, Ethicon, Ethicon Endo, Advanced Sterilization Products, LifeScan, and Codman trademarks, trade names, corporate logos, and marketing materials." Id.  The 2005 Agreement covers contract products under the Ethicon, Ethicon Endo, LifeScan, and Codman brands, again providing evidence that the dispute between plaintiffs and PRHS partially arises out of and relates to the 2005 Agreement.  The resolution of a number of these claims and requests for relief will at the least require reference to the 2005 Agreement.

Keeping in mind both the federal policy favoring arbitration and the maxim that parties are not required to submit

to arbitration any dispute they have not agreed to submit, the Court finds that some of the claims brought forth by J&JI and Ethicon must be submitted to arbitration. Furthermore, letters between the parties reveal that J&JI and Ethicon have already agreed to mediate PRHS's failure to pay for products sold under the 2005 Agreement. (Docket No. 45-2.) The Court finds that the parties must mediate or arbitrate the following: (1) collection of monies related to PRHS's failure to pay for products under the 2005 Agreement; (2) whether PRHS acted in bad faith in breaching the payment terms of the 2005 Agreement; and (3) whether J&JI and Ethicon have just cause to terminate the 2005 Agreement.

**C.   Dismissal or Stay of Proceedings Pending Arbitration**

The final inquiry for the Court is to determine whether to dismiss or stay J&JI and Ethicon's claims pending the completion of arbitration. Under the FAA, if a suit brought in any United States court encompasses an issue referable to arbitration, the Court should stay the action upon application of one of the parties until arbitration has concluded. 9 U.S.C. § 3. "Where a court determines that all claims raised by plaintiff are subject to arbitration, the court may dismiss the entire action, rather than staying it." Caguas Satellite Corp., 824 F. Supp. 2d at 316 (citing Bercovitch v. Baldwin Sch., Inc., 133 F. 3d 141, 156 n. 21 (1st Cir. 1998)). Where only some claims are subject to arbitration, the court has discretion to stay litigation pending

the outcome of arbitration in the "interest of maximizing judicial economy and avoiding piecemeal litigation." Santa Cruz v. Banco Santander P.R., Civil No. 08-1225, 2008 WL 5192347, at * 2 (D.P.R. Dec. 10, 2008) (Fusté, J.).

The Court finds that only J&JI and Ethicon's claims implicating the 2005 Agreement are arbitrable. Considering that the resolution of some claims in arbitration may shed light on the remaining nonarbitrable issues and to avoid inconsistent judgments, it is in the interest of justice to stay all claims pending arbitration. Thus the Court will stay the entire case pending completion of arbitration regarding the 2005 Agreement.

### IV. CONCLUSION

For the reasons discussed above, the Court **DENIES** defendant Customed's motion to compel arbitration, **GRANTS** PRHS's motion to compel arbitration in regards to the 2005 Agreement, and **GRANTS** PRHS and Customed's motion to stay proceedings pending completion of arbitration.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 10, 2017.

                                          s/ Francisco A. Besosa
                                          FRANCISCO A. BESOSA
                                          UNITED STATES DISTRICT JUDGE