## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

JOHNSON & JOHNSON
INTERNATIONAL, *et al.*,

    **Plaintiffs**,

        **v.**

PUERTO RICO HOSPITAL SUPPLY,
INC., *et al.*,

    **Defendants.**

**Civil No.** 17-1405 (FAB)

## OPINION AND ORDER

BESOSA, District Judge.

The Court granted defendant Puerto Rico Hospital Supply, Inc. ("Hospital Supply")'s motion to compel arbitration on July 10, 2017. Johnson & Johnson Int'l v. P.R. Hosp. Supply, Inc., 358 F. Supp. 3d 255 (D.P.R. 2017) (Besosa, J.) The American Arbitration Association ("AAA") subsequently issued an award (hereinafter "award"), finding in favor of Hospital Supply. (Docket No. 92, Ex. 2.) Now before the Court is plaintiff Johnson & Johnson International ("J&JI")'s motion to vacate the award pursuant to the Puerto Rico Arbitration Act ("PRAA"), P.R. Laws Ann. tit. 32, sections 3201 *et. seq.* (Docket No. 100.) Hospital Supply moves to confirm the award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9. (Docket No. 92.) For the reasons set forth below, J&JI's motion to vacate the arbitration award is **DENIED**.

(Docket No. 100.)  Hospital Supply's motion to confirm the award is **GRANTED**.  (Docket No. 92.)  Accordingly, the award is **CONFIRMED**.

## I.   Background

J&JI is a wholly owned subsidiary of Johnson & Johnson, a manufacturer and supplier of healthcare products and medical devices.  (Docket No. 1 at pp. 2-3.)  Hospital Supply distributes surgical supplies, monitoring equipment and high-tech radiology machines to public and private hospitals in Puerto Rico.  Id. at p. 3.

For more than fifty years, Hospital Supply and its predecessors served as the exclusive distributors of Johnson & Johnson products in Puerto Rico.  (Docket No. 1 at p. 4.)  The parties deviated from this practice in 2005, however, by entering into a non-exclusive distribution agreement (the "2005 agreement").  (Docket No. 19, Ex. 1 at p. 18.)  The 2005 agreement includes a limited selection of surgical products (*i.e.*, dermabond, surgifoam, and ultrapro).  Id. at p. 19.  J&JI reserved the right "to sell or offer to sell the Contract Products in [Puerto Rico]" in conjunction with Hospital Supply.  Id. at p. 2. The exclusive agreements remained in force with respect to other products.  (Docket No. 1 at p. 4) (citing the December 6, 1990 agreement regarding disinfecting products, topical absorbable hemostats, and closed wound drainages).

### A.    The Law 75 Dispute

The distribution relationship between the parties deteriorated after Hospital Supply "repeatedly failed to pay its invoices [in violation of the] 90-day payment terms." Id. at p. 5. On March 28, 2017, J&JI commenced a civil action against Hospital Supply pursuant to Puerto Rico Law 75, also known as the Dealers' Act.   Id.; P.R. Laws Ann. tit. 10, § 278a.[1]   Law 75 serves "to protect the interest of commercial distributors working in Puerto Rico."  Gemco Latinoamericana, Inc. v. Seiko Time Corp., 623 F. Supp. 912, 918 (D.P.R. 1985) (Laffitte, J.); R.W. Int'l Corp. v. Welch Foods, 88 F.3d 49, 51 (1st Cir. 1996) ("The Puerto Rico Legislature enacted Law 75 believing that traditional contract-law principles had not afforded local dealers adequate protection from arbitrary dealer-contract terminations by larger, primarily

---

[1] J&JI and Ethicon, Inc. ("Ethicon") filed the complaint against Hospital Supply and Customed, Inc. ("Customed"). (Docket No. 1.) Hospital Supply and Customed are affiliated corporations. Id. J&JI and Ethicon are wholly owned subsidiaries of Johnson & Johnson. (Docket No. 1 at pp. 2—3). Ethicon and Customed are not parties to the 2005 agreement. (Docket No. 19, Ex. 1.) Consequently, the AAA arbitration pertains solely to J&JI and Hospital Supply. Customed and Ethicon are relevant, however, to the Court's jurisdictional analysis. This analysis requires the Court to determine whether it "would have jurisdiction, save the arbitration agreement, over a suit arising out of the controversy between the parties." Ortíz-Espinoza v. BBVA Sec. of P.R., Inc., 852 F.3d 36, 43-44 (1st Cir. 2017) (internal quotation omitted) (citing Vaden v. Discover Bank, 556 U.S. 49, 70 (2009)).   J&JI and Ethicon invoke the Court's diversity jurisdiction. Id. at p. 2; see 28 U.S.C. § 1332. Hospital Supply and Customed are incorporated and have principal places of business in Puerto Rico. Id. at p. 3. J&JI and Ethicon are incorporated and have principal places of business in New Jersey. Id. According to the complaint, Hospital Supply and Customed owe J&JI and Ethicon $4,244,725.81 in unpaid invoices. Id. at p. 10. The Court is satisfied that, based on the allegations set forth in the complaint, diversity jurisdiction exists in this civil action.

mainland-based principals which normally enjoy a superior bargaining position."). The statute provides that:

> [in the absence of a] clause reserving to the parties the unilateral right to terminate the existing [distribution] relationship, no principal or grantor may directly or indirectly perform an act detrimental to the established relationship or refuse to renew said contract in its normal expiration, except for just cause.

P.R. Laws Ann. tit. 10, § 278a.[2] Just cause is the "noncompliance of any of the essential obligations of the sales representation contract by the sales representative, or any act or omission on his/her part that may adversely affect the interests of the principal or grantor." Laws P.R. Ann. tit. 10, § 279d. J&JI seeks a declaratory judgment holding that Hospital Supply's failure to "pay dozens of outstanding invoices" constitutes just cause pursuant to Law 75. (Docket No. 1 at p. 11.)

## B.    The Law 75 Dispute is Subject to Arbitration

The 2005 agreement contains an arbitration clause, requiring Hospital Supply and J&JI to submit any "dispute [that] cannot be settled through negotiation" to the American Arbitration Association. (Docket No. 19, Ex. 1 at p. 17.) Hospital Supply moved to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. sections 1 *et seq.* (Docket No. 19.) The

---

[2] The parties concur that "Law 75 applies to the 2005 Contract." (Docket No. 92, Ex. 6 at p. 2, see Stipulated Fact No. 2.)

FAA mandates district courts to compel arbitration when the parties have signed a valid arbitration agreement governing the issues in dispute. 9 U.S.C. § 4; <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 218 (1985). The Court granted Hospital Supply's motion to compel arbitration of the 2005 agreement. <u>Johnson & Johnson Int'l</u>, 258 F. Supp. 3d at 264.[3] The claims pertaining to the exclusive distribution agreements, however, remained before this Court.

Two months after the order to arbitrate, J&JI terminated "all distribution agreements" because Hospital Supply owed $3,774,982.80 in unpaid invoices. (Docket No. 73, Ex. 1 at p. 3.) The termination notice, however, purported to exclude the 2005 agreement. <u>Id.</u> ("[Hospital Supply] is authorized to continue selling, on a non-exclusive basis, only the limited products covered by Exhibit A to the 2005 Non-Exclusive Distribution Agreement."). Hospital Supply argued, however, that J&JI "clearly and decisively intended and acted to terminate all of the contracts with [Hospital Supply] to appropriate [Hospital Supply's] sales

---

[3] The Court granted Hospital Supply's motion to stay this action pending publication of the arbitration award. <u>Johnson & Johnson Int'l</u>, 258 F. Supp. 3d at 264. Subsequently, Hospital Supply filed a bankruptcy petition. Docket No. 88; <u>see</u> <u>In re</u> <u>P.R. Hospital Supply, Inc.</u>, Case No. 19-1022-ESL 11. The Court stayed this action pursuant to 11 U.S.C. § 362. (Docket No. 89.) After the arbitration panel issued the award, the bankruptcy court granted relief from the automatic stay "to allow [J&JI] to request judicial review, and for [Hospital Supply] to request the confirmation, of the award issued in the arbitration between [the parties]." (Docket No. 90, Ex. 1.)

and clientele" without just cause in contravention of Law 75. (Docket No. 92, Ex. 6 at p. 22.)

## C. The Arbitration Award

The arbitration panel reviewed written submissions from the parties, deposition transcripts, the distribution agreements, product invoices, e-mail correspondence, internal business documents, and conducted a seven-day hearing. (Docket No. 92, Ex. 2 at p. 2.)[4] Ultimately, Hospital Supply prevailed. Id.[5] The arbitration award set forth three principal conclusions: (1) J&JI terminated the 2005 agreement, (2) J&JI failed to demonstrate just cause, and (3) Hospital Supply is entitled to $1,095,528.60 in damages. Id.

### 1. Termination of the 2005 Agreement

The arbitration panel held that J&JI "in fact terminated the 2005 contract with [Hospital Supply]." Id. at

---

[4] The arbitration panel consisted of retired United States District Judge José A. Fusté and two private attorneys, Manuel San Juan and Edgardo Cartagena. (Docket No. 19, Ex. 1 at pp. 62—63.)

[5] J&JI asserted a counterclaim before the arbitration panel for the collection of monies, alleging that Hospital Supply "owed $653,918.83 for products sold and delivered under the 2005 Non-Exclusive Distribution Agreement." (Docket No. 100, Ex. 12 at p. 22.) J&JI failed to introduce "documentary evidence of account statements to support the specific amount claimed." (Docket No. 92, Ex. 2 at p. 59.) Accordingly, the panel dismissed J&JI's counterclaim. Id. at p. 61.

pp. 2—3.   Although the termination notice excluded the 2005 agreement, J&JI nevertheless instructed Hospital Supply "to return all of its excess inventory of Johnson & Johnson products, and flatly prohibited [Hospital Supply]   from accepting any new orders from customers for the sale of any products of J&JI brands." Id. at p. 18.   Hospital Supply complied with J&JI's request, returning 14 pallets of medical supplies to J&JI on September 21, 2017 without differentiating between exclusive and non-exclusive products.   Id. at pp. 18 and 23.   Moreover, J&JI requested that the Court issue a declaratory judgment regarding "just cause to terminate all the agreements and commercial relationships between the parties."   Id. at p. 26.   J&JI's actions contradicted the termination notice, persuading the arbitration panel that its "intention in 2017 was simply to terminate all commercial relations with [Hospital Supply] and move from an indirect to a direct sales

strategy, completely cutting out [Hospital Supply] from the equation." (Docket No. 92, Ex. 2 at p. 31.)[6]

### 2. Just Cause to Terminate the 2005 Agreement

J&JI shouldered the burden of demonstrating that Hospital Supply's failure to remit timely payments constituted just cause pursuant to Law 75. P.R. Laws Ann. tit. 10, § 278a; Warner Lambert Co. Chicle Co. Div. v. Super. Ct. of P.R., 101 D.P.R. 378, 1973 PR Sup. LEXIS 203 (Offic. Trans.) (May 9, 1973) (holding that just cause is an affirmative defense pursuant to Law 75); V. Suárez & Co. v. Dow Brands, Inc., 337 F.3d 1, 6 (1st Cir. 2003). The 90-day payment term stipulated that:

> If [Hospital Supply] fails to pay an invoice for any Contract Products (except in the case of disputed invoices which had not been reconciled by both Parties) within [90 days], such non-payment shall constitute a material breach of this Agreement and [J&JI] shall be entitled (without prejudice to any other right or remedy it may have) to . . . terminate this Agreement.

---

[6] Edgardo Cartagena issued a dissenting opinion. (Docket No. 92, Ex. 3.) He disagreed with the majority's determination that J&JI terminated the 2005 agreement. Id. at p. 6. Because the 2005 agreement was non-exclusive, Cartagena argued, "J&JI could already sell [the] 2005 Agreement products to customers directly and realize the subject profits without terminating [Hospital Supply]." Id. at p. 8. Moreover, J&JI explicitly excluded the 2005 agreement from the termination notice. Id. at p. 7. The circumstantial evidence cited by the majority, according to Cartagena, "sounds like a case of constructive termination," a separate cause of action falling beyond the scope of Law 75. Id. at p. 12; citing Casco, Inc. v. John Deere Constr. & Forestry Co., Case No. 13-1325, 2017 U.S. Dist. LEXIS 54045 *9 (Mar. 30, 2017) ("The court dismissed the claim under Rule 50 because Law 75 does not recognize constructive termination as a separate claim.") (Delgado-Hernández, J.).

(Docket No. 19, Ex. 1 at p. 5.)  Because Hospital Supply violated the 90-day payment provision, J&JI argued, it terminated the 2005 agreement with just cause.  Docket No. 92, Ex. 6 at p. 62; see Freightliner LLC v. P.R. Truck Sales, Inc., 399 F. Supp. 2d 57, 75 (D.P.R. 2005) (noting that the "consistent failure to pay past-due invoices has been held to violate an essential obligation of any business relationship") (Vélez-Rivé, Mag. J.).

The majority of the panel disagreed.  It concluded that the 90-day payment provision is not an essential obligation of the 2005 agreement.  (Docket No. 92, Ex. 2 at p. 33.)  J&JI permitted Hospital Supply to "pay its debts eventually, as it did with virtually all other purchasers of its products in the Puerto Rico market."  Id.  The award relied significantly on Biomedical Instrument & Equip. Corp. v. Cordis Corp., 797 F.2d 16 (1st Cir. 1986).  Id. at p. 32.  In Cordis Corp., a Puerto Rico sales representative commenced a Law 75 action against the principal. Id. at 17.  The district court granted the principal's motion for summary judgment because the sales representative "typically and continuously ran an overdue (beyond 90 days) balance."  Id.  The First Circuit Court of Appeals reversed and remanded the action for further proceedings, holding that the sales representative raised genuine issues of material fact suggesting that "its duty to pay on time, while an obligation, was not an essential

obligation of its contract." Id. Like the principal in Cordis Corp., J&JI "never strictly enforced" the 90-day payment provision. (Docket No. 92, Ex. 2 at p. 34.) Accordingly, the failure to comply with a non-essential obligation of the 2005 agreement served as an insufficient basis to terminate the distribution relationship.

The record demonstrated that the reason J&JI terminated the 2005 agreement (i.e., untimely payment) was pretextual, obscuring J&JI's desire to implement a direct sales model in Puerto Rico. Id. at p. 35. See Waterproofing Sys. v. Hyrdo-Stop, Inc., 440 F.3d 24, 30 (1st Cir. 2006) (holding that "[the principal's] claim of just cause on the basis of late payments was merely a pretext for abrogating the Distribution Agreement"). J&JI's 2015-2018 business plan "identified competitor's direct sales to health care providers as a threat and suggested that [J&JI] needed to sell direct as well to be able to compete effectively." (Docket No. 92, Ex. 2 at p. 37.) Hospital Supply offered J&JI a payment and performance bond, "the equivalent of having cash on hand to collect in case of a default in payment." Id. at pp. 3 and 5. J&JI rejected this offer without serious consideration. Id. at p. 4. In 2017, J&JI commended its lead officer in Puerto Rico for "[moving] the organization from an indirect to a direct model." (Docket No. 92, Ex. 2 at p. 20.)

The evidence "strongly suggest[ed] the existence of a plan to completely cut out [Hospital Supply] as a distributor of J&JI products in the Puerto Rico market." (Docket No. 92, Ex. 2 at pp. 29—30.) Accordingly, the panel held J&JI liable for terminating the 2005 agreement without just cause.

### 3. Damages

Termination of a distribution agreement without just cause is "a tortious act." Laws P.R. Ann. tit. 10, § 279c. Consequently, J&JI is required to "compensate [Hospital Supply] to the extent of the damages caused to [it]." Id; see IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 445 (1st Cir. 2010) ("If the principal terminates its commercial relationship with an exclusive sales representative without just cause, it is liable for the damages caused."). Law 75 also permits the "granting of attorney's fees to the prevailing party, as well as reasonable reimbursement of the expert's fees." Laws P.R. Ann. tit. 10, § 278e.

The Puerto Rico legislature set out "guidelines for the fixing of the damages" in Law 75 actions. Marina Inds. v. Brown Boveri Corp., 114 D.P.R. 64, 1983 PR Sup. LEXIS 65 (Offic. Trans.) (Mar. 13, 1983); Computec Sys. Corp v. Gen. Automation, Inc., 599 F. Supp. 819, 826 (D.P.R. 1984) (holding that Law 75 "provides for the liberal interpretation [of damages] in furtherance of the remedial considerations behind it.") (Cerezo,

J.).[7]  The panel considered these guidelines, reviewed financial

statements, and heard testimony from expert witnesses.  (Docket

No. 92, Ex. 2 at pp. 52—54.)  Hospital Supply received the

following award:

**Lost Profits**: $277,537.00

**Inventory**: $186,767.34

**Attorney's Fees**: $464,126.25

**Expert Witness Fees**: $69,361.38

**Litigation Costs**:[8] $19,910.81

**American Arbitration Association Fees**:[9] $11,200.00

---

[7] Damages are based on the following factors:

(a)     The actual value of the amount expended by the dealer in
        the acquisition and fitting of premises, equipment,
        installations, furniture and utensils, to the extent that
        these are not easily and reasonably useful to any other
        activity in which the dealer is normally engaged.

(b)     The cost of the goods, parts, pieces, accessories and
        utensils that the dealer may have in stock, and from whose
        sale or exploitation he is unable to benefit.

(c)     The good will of the business, or such part thereof
        attributable to the distribution of the merchandise or to
        the rendering of the pertinent services, said good will to
        be determined by taking into consideration [enumerated]
        factors.

Laws P.R. Ann. tit. 10, § 278(b).

[8] Litigation costs include the fees for photocopies, depositions, hearings,
transcripts, and administrative support.  (Docket No. 92, Ex. 2 at p. 58.)
[9] The 2005 agreement authorizes the panel to "award the costs and expenses of
the arbitration as provided in the AAA Rules."  (Docket No. 19, Ex. 1 at p. 18.)

      **Panel Fees (Pro Rata Share):**[10] $66,625.90

      **6.25% Interest:**[11] $89,069.51

      ————————————————————————————————————

      **Total Due to Hospital Supply:** $1,184,598.19

Id. at pp. 61—62.  This award reflects the damages sustained by

Hospital Supply solely with respect to the 2005 agreement.  Id.

## II.  The Federal Arbitration Act and the Puerto Rico Arbitration Act

    Hospital Supply moved to confirm the arbitration award

pursuant to the Federal Arbitration Act.  (Docket No. 92, Ex. 2 at

p. 7 (citing 9 U.S.C. § 9)).[12]  J&JI moved to vacate the award,

however, arguing that the Puerto Rico Arbitration Act is

applicable.  (Docket No. 100 at p. 6.)  Both statutes provide for

the enforcement of arbitration awards.  See 9 U.S.C. §§ 9—11; Laws

P.R. Ann. tit. 32, § 3221.

    Congress enacted the FAA in 1925 to establish arbitration as

a legitimate alternative to federal litigation, setting forth "one

of the narrowest standards of judicial review in all of American

---

[10] Arbitrators "receive compensation at a rate to be suggested by the AAA regional office."  Am. Arbitration Ass'n, Rules and Mediation Procedures, p. 36 (2013) (available at https://www.adr.org/Rules) (last visit Sept. 25, 2019).

[11] The interest rate is set by the Puerto Rico Office of the Commissioner of Financial Institutions.  (Docket No. 92, Ex. 2 at p. 61.)

[12] The FAA states that "at any time within one year after the award is made any party to the arbitration may apply to the court" to confirm, vacate or modify the award.  9 U.S.C. § 9.  The arbitration panel issued the award on May 2, 2019.  (Docket No. 19, Ex. 1.)  Hospital Supply moved to confirm the award on July 10, 2019.  (Docket No. 92.)  J&JI moved to vacate the award on August 2, 2019.  (Docket No. 100.)  Accordingly, both motions are timely.

jurisprudence." <u>UMASS Mem. Med. Ctr., Inc. v. United Food &</u>
<u>Commer. Workers Union, Local 1445</u>, 527 F.3d 1, 6 (1st Cir. 2008)
(affirming denial of motion to vacate an arbitration award because
the plaintiff "fail[ed] to meet the exceedingly high threshold for
judicial interference with arbitral awards").[13]

The FAA and the PRAA contain similar standards of review.
Indeed, the FAA served as a prototype for the PRAA. <u>See</u> <u>Universal</u>
<u>Ins. Co., Inc. v. Warrantech Consumer Prod. Servs., Inc.</u>, 849 F.
Supp. 2d 227 (D.P.R. 2012) ("Not only is the PRAA modeled after
the FAA, but it tracks it closely as well.") (Casellas, J.).[14]
Courts construe the PRAA narrowly, holding that revocation of an
arbitration award is inappropriate "unless . . . there is alleged
fraud, misconduct, or the commission of gross or prejudicial error
equivalent to a violation of the right to a due process of law."
<u>P.R. Hous. Auth.</u>, 82 D.P.R. 344; <u>Febus v. MARPE Constr. Corp.</u>, 135
D.P.R. 206, 1994 PR Sup. LEXIS 224 (Offic. Trans.) (Feb. 25, 1994)
("[The arbitrator's] findings of fact and of law are final and not

---

[13] <u>See</u> <u>First State Ins. v. Nat'l Case. Co.</u>, 781 F.3d 7, 11 (1st Cir. 2015) ("Put
another way, as long as an arbitration award draws its essence from the
underlying agreement, it will withstand judicial review – and it does not matter
how good, bad, or ugly the match between the contract and the terms of the award
may be.") (quotation omitted) (citing <u>Oxford Health Plans LLC v. Sutter</u>, 569
U.S. 564, 573 (2013)).

[14] <u>See</u> <u>P.R. Hous. Auth. v. Super. Ct. of P.R.</u>, 82 D.P.R. 344, 1961 PR Sup. LEXIS
343 (Offic. Trans.) (Apr. 11, 1961) ("The provisions of [the PRAA] are
substantively patterned on the arbitration legislation of California and on
similar laws of other states, on the New York proceedings, and on the United
States Arbitration Act.").

subject to judicial review, even if the arbitrator had erred in weighing the facts and the applicable law, and even if the court would have concluded otherwise.").

J&JI contends that the PRAA sets forth a more searching standard of review than the FAA, akin to the deference courts confer to administrative agencies.  Docket No. 100 at p. 7; see Unión de la Industria Licorera de Ponce v. Destilería Serrallés, 116 D.P.R. 348, 1985 PR Sup. LEXIS 88 (Offic. Trans.) (Apr. 23, 1985); Constructora Estelar v. Autoridad de Edificios Públicos, 183 D.P.R. 1 (2011) (noting that the standard of review corresponding to the "accordance with the law" language is "analogous to that of administrative decisions").[15]  The Puerto Rico Supreme Court has, in fact, held that courts may "review the legal merits of the [arbitration] award" when "the parties agreed in their submission agreement that the award would be in accordance with the law."  Constructora Estelar, 183 D.P.R. 1; see Jorge García, Commercial Arbitration in Puerto Rico After Hall Street, 87 Rev. Jur. U.P.R. 236, 243 (2018) (noting that "[despite] the exclusive language of [the PRAA], the parties to an arbitration

---

[15] J&JI submitted official English translations of Constructora Estelar, 183 D.P.R. 1, and Destilería Serrallés, 116 D.P.R. 348.  (Docket No. 134, Exs. 3 and 5.)  The Supreme Court of Puerto Rico has "reiterated on countless occasions that the decisions of administrative forums enjoy a presumption of regularity and correctness."  Segarra v. State Ins. Fund Corp, 188 D.P.R. 252, 2013 PR Sup. LEXIS 38 (Offic. Trans.) (Mar. 19, 2013) (internal quotation omitted).  Administrative decisions must, however, "[yield] in the face of an unreasonable or illegal action."  Id. (citing Pacheco v. Estancias, 160 D.P.R. 409 (2003)).

may also contractually expand the scope of judicial review and grounds for vacating awards provided in the Act"). The Court need not address this augmented standard of review, however, because the PRAA is inapposite.

### A.    The FAA is Applicable

The FAA is an expansive statute, encompassing any "contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract or transaction." 9 U.S.C. § 2; Rivera-Colón v. AT&T Mobility P.R., Inc., 913 F.3d 200, 207 (1st Cir. 2019) (noting that "the existence of an enforceable agreement to arbitrate is the first needed step to trigger the FAA's protective reach") (citation omitted). The term "commerce" refers to financial transactions conducted "between any such Territory [of the United States] and any State or foreign nation." 9 U.S.C. § 1; Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003) ("We have interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power.").

J&JI and Hospital Supply agreed to arbitrate disputes arising from the 2005 agreement. Docket No. 19, Ex. 1 at p. 1; Johnson & Johnson, Int'l, 258 F. Supp. 3d at 258. The 2005

agreement provided "for the sale and distribution of certain products [*i.e.* medical supplies from the United States] in [Puerto Rico]." (Docket No. 19, Ex. 1 at p. 1.) Consequently, the agreement involves commerce, and the FAA is applicable.

J&JI maintains, however, that the 2005 agreement displaced the FAA. (Docket No. 100 at p. 17; citing <u>Volt Info. Scis. v. Bd. of Trs.</u>, 489 U.S. 468, 479 (1989) ("Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit."); <u>Hall St. Assocs. LLC v. Mattel, Inc.</u>, 552 U.S. 576, 589 (2008) ("The FAA is not the only way into court for parties wanting review of arbitration awards; they may contemplate enforcement under state statutory or common law, for example, where judicial review of different scope is arguable."). The gravamen of J&JI's displacement argument concerns a choice-of-law provision. The parties stipulated that the 2005 agreement:

> shall be governed by and construed in all respects in accordance with the laws of the Commonwealth of Puerto Rico (which is declared to be the proper law of this Agreement) without regard to the principles of conflicts of law.

(Docket No. 19, Ex. 1 at p. 18.) According to J&JI, the "accordance with the law" stipulation triggers the standard of review that "would apply to administrative decisions." Docket No. 100 at pp. 19—21. Hospital Supply argues, however, that the choice-of-

law provision "cannot be presumed to apply the [PRAA]." (Docket No. 132 at p. 20.) The Court agrees.

The First Circuit Court of Appeals' decision in <u>Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.</u> is dispositive. 932 F.3d 1 (1st Cir. 2019). The American Health Lawyers Association issued an arbitration award regarding a contractual dispute between a health care provider and a management firm. <u>Id.</u> at 2—3. The district court denied the medical care provider's motion to vacate the award, holding that the "FAA applied to the controversy." <u>Id.</u> at 5. On appeal, the medical care provider argued that the "PRAA, not the FAA alone, should have governed the district court's standard of review of the arbitration decision." <u>Id.</u> at 6.[16] The relevant choice-of-law clause provided that the contract was "to be construed in accordance with the internal substantive laws of the Commonwealth of Puerto Rico." <u>Id.</u> at 8. The <u>Dialysis</u> court emphasized that precedent from the First Circuit Court of Appeals is unequivocal: "[A] general choice-of-law contract provision is not enough to displace the FAA's standard of review." <u>Id.</u> at 10 (citing <u>Ortiz-Espinosa v. BBCA Sec. of P.R., Inc.</u>, 852 F.3d 36, 42 (1st Cir. 2017) (holding that the FAA "may be displaced (if at

---

[16] Like J&JI, the medical care provider cited <u>Constructora Estelar</u>, 183 D.P.R. 1, for the proposition that the district court "should have undertaken a standard of review more akin to a judicial review of an administrative decision, which permits some greater scrutiny of the merits of the award." <u>Dialysis Access Ctr., LLC</u>, 932 F.3d at 4.

all) only if the parties have so agreed explicitly"); P.R. Tel.
Co. v. U.S. Phone Mfg. Corp., 427 F.3d 21, 29 (1st Cir. 2005)
(holding that "the mere inclusion of a generic choice-of-law clause
within the arbitration agreement is not sufficient to require the
application of state law concerning the scope of review, since
there is a strong federal policy requiring limited review")).
Accordingly, the medical care provider in Dialysis failed to
demonstrate an explicit displacement of the FAA.  Id. at 10.

        J&JI's arguments are identical to those presented by the
medical care provider in Dialysis, and equally unpersuasive.  932
F.3d 1.  Absent from the 2005 agreement is an explicit displacement
of the FAA.  See UHC Mgmt. Co. v. Computer Sciences Corp., 148
F.3d 992, 997 (8th Cir. 1998) ("[We] will not interpret an
arbitration agreement as precluding the application of the FAA
unless the parties' intent that the agreement be so construed is
abundantly clear.").  J&JI posits that the phrases "in all
respects" and "without regard to the principles of conflicts of
laws" compels "this Court to evaluate this petition pursuant to
Puerto Rico law and the prevailing Puerto Rico case law." (Docket
No. 100 at p. 20.)  J&JI conflates the substantive law with the
standard of review.  See Mastrobuono v. Shearson Lehman Hutton,
514 U.S. 52, 64 (1995) (holding that the "choice-of-law provision
covers the rights and duties of the parties, while the arbitration

clause covers arbitration; neither . . . intrudes upon the other."). The phrases "in all respects" and "conflicts of laws" refer to the substantive law, constituting a "generic choice-of-law provision" rather than an "opt-out of the FAA." <u>See</u> <u>Oberwager v. McKechnia Ltd.</u>, 351 Fed. Appx. 708, 711 (3rd Cir. Oct. 20, 2009).[17] In fact, courts have applied the FAA standard of review despite the presence of a "conflicts of laws" provision. <u>See, e.g.</u>, <u>Beumer Corp. v. ProEnergy Servs., LLC</u>, 899 F.3d 564, 565 (8th Cir. 2018) (applying the FAA standard of review where the parties specified that the "Agreement will be subject to, governed by and construed in accordance with the laws of the State of Missouri without giving effect to its conflicts of law rules."); <u>Saturn Telecomms. Servs. v. Covad Communs. Co.</u>, 560 F. Supp. 2d

---

[17] Courts reject generic choice-of-law provisions as evidence that the parties displaced the FAA. <u>See, e.g.</u>, <u>Ario v. Underwriting Members of Syndicate 53 at Lloyds</u>, 618 F.3d 277, 294 ("the arbitration shall be in accordance with the rules and procedures established by the Uniform Arbitration Act as enacted in Pennsylvania" did not displace the FAA); <u>Action Indus. v. U.S. Fid. & Guar. Co.</u>, 358 F.3d 337, 340—343 (5th Cir. 2004) ("the law of the State of Tennessee shall govern the execution and performance of this agreement when accepted as herein provided"); <u>Volk v. X-Rite, Inc.</u>, 599 F. Supp. 2d 1118, 1123—1125 (S.D. Iowa 2009) ("To the extent not otherwise displaced by applicable law, this Agreement shall be governed by and interpreted and construed in accordance with the laws of the State of Michigan . . . The award shall be final and judgment upon the award rendered may be entered in any court having jurisdiction."). An explicit expression by the parities that state law governs the arbitral standard of review is necessary. <u>See e.g.</u>, <u>Johnson v. Gruma Corp.</u>, 614 F.3d 1062 (9th Cir. 2010) (holding that the parties displaced the FAA by stipulating that the arbitration be "conducted and subject to enforcement pursuant to the provisions of the California Code of Civil Procedure sections 1280 through 1295, or other applicable law"); <u>Foulger-Pchratt Residential Constr., LLC v. Madrigal Condos, LLC.</u>, 779 F. Supp. 2d 100, 108—111 (D.D.C. 2011) (same, "this agreement to arbitrate shall be specifically enforced pursuant to and interpreted under the laws of the District of Columbia.")

1278, 1282 (S.D. Fla. 2008); <u>Amerix Corp. v. Jones</u>, 457 Fed. Appx. 287, 289 (4th Cir. Dec. 9, 2011).

The structure and organization of the 2005 agreement underscores that the choice-of-law provision cited by J&JI pertains solely to the substantive law, not judicial review of the arbitration award. The "Governing Law" provision is set forth in section 30, after the "Dispute Resolution and Arbitration" clause in section 29. (Docket No. 19, Ex. 1 at pp. 17—18.) Section 29(b) states that the "arbitrators shall decide the dispute in accordance with the law governing this Agreement. The award of the arbitration may be entered in any court of competent jurisdiction." <u>Id.</u> at p. 17. The "in accordance with the law" condition extends to the arbitration panel, not the "court of competent jurisdiction." <u>See</u> <u>Dialysis</u>, 932 F.3d at 8 (affirming application of the FAA standard of review despite an "in accordance with the law" provision in the agreement). That the parties placed the choice-of-law and arbitration provisions in separate subsections bolsters the Court's conclusion that the FAA, rather than the PRAA, is applicable.

J&JI cites <u>Universal</u> for the proposition that the parties intended to substitute the PRAA for the FAA. Docket No. 143 at p. 5; citing 849 F. Supp. 2d 227. In <u>Universal</u>, the prevailing party in an arbitration moved to confirm the award

pursuant to the FAA.  Id. at 231.  The opposing party asserted, however, that the PRAA standard of review applied because the parties "agreed that Puerto Rico's substantive law would govern the arbitration process."  Id. at 230.  The Universal court reviewed the award pursuant to the PRAA "as well as case law under the FAA," holding that the "grounds for vacating an arbitration award are identical under both statutes."  Id. at p. 235. Universal is distinguishable because the FAA and the "accordance with the law" standards of review are vastly different.  Notably, Universal predates Dialysis by seven years.  Subsequent First Circuit Court of Appeals jurisprudence is authoritative, establishing that "a general choice-of-law contract provision is not enough to displace the FAA's standard of review."  Dialysis, 932 F.3d at 10.  Accordingly, application of the PRAA standard of review is inappropriate.

## III. The Federal Arbitration Act Standard of Review

The Court "must" confirm an award "unless [it] is vacated, modified, or corrected."  9 U.S.C. § 9; see FleetBoston Fin. Corp. v. Alt, 638 F.3d 70, 78 n.8 (1st Cir. 2011) ("The Supreme Court has made clear that, absent vacating or modifying an award under [the FAA], an arbitral award must be enforced.").  Sections 10 and 11 of the FAA set forth an "extremely narrow and exceedingly deferential" standard of review.  Bull HN Info. Sys. Inc. v.

Hutson, 229 F.3d 321, 330 (1st Cir. 2000); Teamsters Local Union

No. 42 v. Spervalu, Inc., 212 F.3d 59, 61 (1st Cir. 2000)

("Arbitral awards are nearly imperious to judicial oversight.")

(citation omitted).  Pursuant to section 10 of the FAA, the Court

may vacate an arbitration award:

> (1)  where the award was procured by corruption, fraud,
>      or undue means;
>
> (2)  where there was evident partiality or corruption in
>      the arbitrators, or either of them;
>
> (3)  where the arbitrators were guilty of misconduct in
>      refusing to postpone the hearing, upon sufficient
>      cause shown, or in refusing to hear evidence
>      pertinent and material to the controversy; or of
>      any other misbehavior by which the rights of any
>      party have been prejudiced; or
>
> (4)  where the arbitrators exceeded their powers, or so
>      imperfectly executed them that a mutual, final, and
>      definite award upon the subject matter submitted
>      was not made.

9 U.S.C. § 10(a).  Section 11 permits the modification of an award

in three circumstances:  (1) when "there is an evident material

miscalculation of figures or an evident material mistake in the

description of any person, thing or property," (2) the award

concerns "a matter not submitted" to the arbitration panel, or

(3) where "the award is imperfect in matter of form not affecting

the merits of the controversy."  9 U.S.C. § 11.  Sections 10 and 11

are the "exclusive grounds for expedited vacatur and

modification."  Hall St. Assocos., LLC, 552 U.S. at 584; Kashner

Davidson Sec. Corp. v. Mscisz, 601 F.3d 19, 22 (1st Cir. 2010)
(holding that "the grounds for prompt vacatur or modification of
an arbitral award enumerated in the [FAA] are exclusive and may
not be supplemented by contract"); see Keebler Co. v. Truck
Drivers, 247 F.3d 8, 10 (1st Cir. 2001) ("[D]isputes that are
committed by contract to the arbitral process almost always are
won or lost before the arbitrator.  Successful court challenges
are few and far between.").

        A.  **Manifest Disregard of the Law**

        J&JI invokes the manifest disregard of the law doctrine
as an alternative standard of review.  (Docket No. 100 at p. 40.)
This doctrine is a judicial construct.  Wilko v. Swan, 346 U.S.
427, 436—37 (1953) (noting in *dicta* that "the interpretations of
the law by the arbitrators in contrast to manifest disregard are
not subject, in the federal courts, to judicial review for error
in interpretation"); see Stephen Hayford, A New Paradigm for
Commercial Arbitration:    Rethinking the Relationship Between
Reasoned Awards and the Judicial Standards for Vacatur, 66 GEO.
WASH. L. REV. 443, 465 (1998) ("Manifest disregard of the law is
the seminal nonstatutory ground for vacatur of commercial
arbitration awards").

        To prevail pursuant to the manifest disregard of the law
doctrine, J&JI must demonstrate that the "award is contrary to the

plain language of the contract, [or] it is clear from the record
that the arbitrator recognized the applicable law – and then
ignored it." Bull HN Info. Sys. Inc., 229 F.3d at 331; Cytyc Corp.
v. DEKA Prods., Ltd. P'ship, 439 F.3d 27, 33 (1st Cir. 2006)
(noting that the manifest disregard of the law doctrine "arises in
those rare cases in which it is clear from the record that
arbitrators cavalierly disregarded applicable law") (citation
omitted).  Manifest disregard of the law requires vacation of an
award that is:  (1) "unfounded in reason and fact," (2) "based on
reasoning so palpably faulty that no judge, or group of judges,
ever could conceivably have made such a ruling," or (3) "mistakenly
based on a crucial assumption that is concededly a non-fact."
Zayas v. Bacardí Corp., 524 F.3d 65, 68 (1st Cir. 2008) (citation
omitted).[18]

---

[18] The First Circuit Court of Appeals "has yet to decide whether manifest
disregard of the law remains as a ground for vacatur" after the Supreme Court's
decision in Hall Street.  Mt. Valley Prop., 863 F.3d at 95; Dialysis Access
Ctr., LLC, 932 F.3d at 13 n.13 (Although the Supreme Court has queried whether
manifest disregard remains a viable route to vacatur . . . this court has
avoided answering the question and instead has assumed its continued
application."); Ortíz-Espinosa, 852 F.3d at 46 (noting that the doctrine "has
been thrown into doubt by Hall Street, where the Supreme Court held that § 10
provides the FAA's exclusive ground for expediated vacatur") (internal citation
and quotation omitted).  Despite the uncertain future of this alternative
standard of review, the manifest disregard of the law doctrine remains binding
on this Court.  Consequently, the arbitration award remains subject to this
"judicial gloss." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662,
760 (2010); see e.g., Union Insular de Trabajadores Industriales y
Construcciones Electricas, Inc. v. Onelink Communs., 336 F. Supp. 3d 1, 4 n.1
(D.P.R. 2018) ("Since the First Circuit has not overruled the manifest-disregard
doctrine, this Court is bound by First Circuit precedent and enumerates all
grounds for review of the arbitration award.") (Delgado-Colón, J.).

## B.    J&JI Failed to Satisfy the Manifest Disregard of the Law Standard

J&JI maintains that the arbitration panel issued the award in manifest disregard of the law for two reasons. (Docket No. 100 at pp. 40—50.)   First, J&JI argues that the arbitration panel "disregarded that Law 75 forbids a damages award for constructive termination."   Id. at p. 41.   Second, J&JI asserts that the arbitration panel misconstrued the 90-day payment term as a non-essential provision of the 2005 agreement.   Id. at p. 42.

The record is devoid of evidence suggesting that the arbitration panel "ignored" Law 75.   See Advest, Inc. v. McCarthy, 914 F.2d 6, 9 (1st Cir. 1990); Hawayek v. A.T. Cross Co., 221 F. Supp. 2d 254, 258 (D.P.R. 2002) (confirming arbitration award because the "Court's difference of opinion with the Arbitrator is not enough to overturn his verdict") (Casellas, J.).   The arbitration award sets forth a well-reasoned and methodical approach to the Law 75 dispute, citing the relevant statutes, case law, and evidence.   (Docket No. 92. Ex. 2.)   J&JI disagrees with the panel majority's legal and factual conclusions.   See Docket No. 100 at p. 45.   The Court will not subvert the sound judgment of the arbitration panel on this basis.   See Bangor Gas Co. v. H.Q. Energy Servs. United States, 695 F.3d 181, 187 (1st Cir. 2012)

(noting that "an FAA award cannot be overturned based on mere disagreement by the court with the panel on a debatable issue").

## IV.   Attorney's Fees

The arbitration panel awarded $464,126.25 in attorney's fees to Hospital Supply.  (Docket No. 92, Ex. 2 at p. 58.)  Law 75 provides that "the court may allow the granting of attorney's fees to the prevailing party, as well as a reasonable reimbursement of the expert's fees."  P.R. Laws Ann. tit. 10, § 278e.  The 2005 agreement specifies, however, that:

> each Party shall bear its own attorneys fees unless the arbitral tribunal issues a ruling finding that one of the Party's actions and/or arguments to have been frivolous and orders the frivolous Party to bear the attorneys fees of the other Party.

(Docket No. 19, Ex. 1 at p. 18.)  J&JI moves to vacate the allocation of attorney's fees.  (Docket No. 100 at p. 37.) According to J&JI, the "majority awarded attorney's fees without making a finding of frivolity as agreed by the parties."  Id.

The 2005 agreement authorized the arbitrators to award attorney's fees.  (Docket No. 19, Ex. 1 at p. 18.)  That they did so without explicitly referring to the frivolity provision is inconsequential for the purposes of the FAA.  See Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 572 (2013) ("All we can say is that convincing a court of an arbitrator's error – even his grave error – is not enough . . . . The potential for those mistakes is

the price of agreeing to arbitration."); E. Seaboard Constr. Co. v. Gray Constr., Inc., 553 F.3d 1, 13 (1st Cir. 2008) (holding that pursuant to the FAA, "if the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed a serious error does not suffice to overturn his decision") (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)).[19] Accordingly, the arbitration award is **CONFIRMED.**

## V.   Conclusion

For the reasons set forth above, J&JI's motion to vacate is **DENIED**. (Docket No. 100.)  Hospital Supply's motion to confirm is **GRANTED**. (Docket No. 92.)  Accordingly, the award is **CONFIRMED**.

There being no just reason to delay, Partial Judgment shall be entered accordingly.  A scheduling order will be entered by separate order for the claims concerning the exclusive agreements which remain in force with respect to the products not included in the 2005 agreement.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 25, 2019.

---

[19] Tellingly, J&JI requested attorney's fees from the arbitration panel, asserting that Law 75 invalidated the 2005 agreement. (Docket No. 93, Ex. 6 at p. 67; Docket No. 132, Ex. 2.)  According to J&JI, the limitation of "attorney's fees only to cases where a party has acted frivolously . . . runs counter to Law 75 and is therefore invalid." Id. citing P.R. Laws Ann. tit 10, § 278c ("The provisions of this chapter are of a public order and therefore the rights determined by such provisions cannot be waived.").

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE